IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-01180-KLM

REBECCA L. FULLER CORDOVA,

    Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

    Defendant.
_____

**ORDER**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

    This matter is before the Court[1] on the **Social Security Administrative Record** [#13],[2] filed June 25, 2014, in support of Plaintiff's Complaint [#1] seeking review of the decision of Defendant Carolyn W. Colvin, Acting Commissioner of the Social Security Administration, ("Defendant" or "Commissioner") denying Plaintiff's claim for disability insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401-433 (the "Act") and for supplemental security income benefits pursuant to Title XVI of the Act, 42 U.S.C. §§ 401-433.  On August 13, 2014, Plaintiff filed an Opening Brief [#16] (the "Brief"). Defendant filed a Response [#17] (the "Response") in opposition, but no Reply was filed. The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §

---

[1] The parties consented to proceed before the undersigned for all proceedings pursuant to 28 U.S.C. § 636(c) and D.C.COLO.LCivR 72.2.  *See Consent Form* [#20]; *Order of Reference* [#21].

[2] "[#13]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF).  This convention is used throughout this Order.

405(g). The Court has reviewed the entire case file and the applicable law and is sufficiently advised in the premises. For the reasons set forth below, the decision of the Commissioner is **AFFIRMED**.

## I. Factual and Procedural Background

Plaintiff alleges that she became disabled at the age of forty-four on October 10, 2010, due to mental health issues. Tr. 156, 185.[3] In August and October 2010, Plaintiff protectively filed applications for disability insurance benefits under Title II and for supplemental security income under Title XVI. Tr. 156-65.

On June 12, 2012, a hearing was held before an Administrative Law Judge (the "ALJ"). Tr. 38-64. On August 20, 2012, the ALJ entered his Decision, finding that Plaintiff was "not disabled under section 1614(a)(3)(A) of the Social Security Act." Tr. 32. The ALJ determined that Plaintiff met the insured status requirements of the Act through September 30, 2012, and that Plaintiff had not engaged in substantial gainful activity since October 10, 2010, the alleged onset date of her disability. Tr. 22. The ALJ found that Plaintiff suffers from four severe impairments: (1) bipolar disorder, (2) post-traumatic stress disorder, (3) a history of methamphetamine abuse, and (4) degenerative disc disease.[4] Tr. 23. However, the ALJ also found that these impairments, individually or in combination, do not meet or medically equal "the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925

---

[3] The Court refers to the Transcript of the Administrative Proceedings, located at Docket Nos. 13, 13-1, 13-2, 13-3, 13-4, 13-5, 13-6, 13-7, 13-8, 13-9, 13-10, and 13-11 by the sequential transcript numbers instead of the separate docket numbers.

[4] On this appeal, Plaintiff is only challenging the ALJ's evaluation of Plaintiff's mental impairments, not the ALJ's evaluation of her physical impairments. *See generally Brief* [#16]; *Response* [#17] at 3 n.2.

and 416.926)." Tr. 23.  The ALJ next concluded that Plaintiff has the residual functional capacity ("RFC") "to perform light work . . . but is restricted from jobs requiring public contact."  Tr. 24.  Based on the RFC and the testimony of an impartial vocational expert (the "VE"), the ALJ found that Plaintiff was unable to perform any past relevant work but that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform . . . ."  Tr. 30.  Specifically, based on the testimony of the VE, the ALJ concluded that Plaintiff could perform the representative occupations of electronics assembler, housekeeper, and small products assembler.  Tr. 31.  He therefore found Plaintiff not disabled at step five of the sequential evaluation.  Tr. 31.

Plaintiff appealed to the Appeals Council, which denied her request for review of the ALJ's decision.  Tr. 4.  Therefore, the ALJ's decision became the final decision of the Commissioner for purposes of judicial review.  20 C.F.R. §§ 404.981, 416.1481.

## II. Standard of Review and Applicable Law

Pursuant to the Act:

> [T]he Social Security Administration is authorized to pay disability insurance benefits and Supplemental Security Income to persons who have a "disability." A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."

*Barnhart v. Thomas*, 540 U.S. 20, 21-22 (2003) (quoting 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B)).  Under the applicable legal standard, a claimant is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a); *see also*

*Wall v. Astrue*, 561 F.3d 1048, 1051 (10th Cir. 2009) (quoting 20 C.F.R. § 416.905(a)). The existence of a qualifying disabling impairment must be demonstrated by "medically acceptable clinical and laboratory diagnostic" findings. 42 U.S.C. §§ 423(d)(3), 423(d)(5)(A).

"When a claimant has one or more severe impairments the Social Security [Act] requires the [Commissioner] to consider the combined effects of the impairments in making a disability determination." *Campbell v. Bowen*, 822 F.2d 1518, 1521 (10th Cir. 1987) (citing 42 U.S.C. § 423(d)(2)(C)). However, the mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Act. To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months. *See Kelley v. Chater,* 62 F.3d 335, 338 (10th Cir. 1995).

The Court reviews a final decision by the Commissioner by examining the administrative record and determining "whether the [ALJ's] factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). However, the Court "may neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Harper v. Colvin*, 528 F. App'x 887, 890 (10th Cir. 2013) (quoting *Barnett v. Apfel*, 231 F.3d 687, 689 (10th Cir. 2000)). In other words, the Court does not reexamine the issues de novo. *Sisco v. U.S. Dep't of Health & Human Servs.*, 10 F. 3d 739, 741 (10th Cir. 1993). Thus, even when some evidence could support contrary findings, the Court "may not displace the agency's choice between two fairly conflicting views," even if the Court may have "made a different choice had the matter been before it *de novo.*" *Oldham v. Astrue*,

509 F.3d 1254, 1257-58 (10th Cir. 2007).

**A.     Legal Standard**

The Social Security Administration uses a five-step framework to determine whether a claimant meets the necessary conditions to receive Social Security benefits. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof at steps one through four, and if the claimant fails at any of these steps, consideration of any subsequent steps is unnecessary. *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988) ("If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."). The Commissioner bears the burden of proof at step five. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

Step one requires the ALJ to determine whether a claimant is "presently engaged in substantial gainful activity." *Wall*, 561 F.3d at 1052 (quoting *Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004)). If not, the ALJ considers at step two whether a claimant has "a medically severe impairment or impairments." *Id.* "An impairment is severe under the applicable regulations if it significantly limits a claimant's physical or mental ability to perform basic work activities." *Wall*, 561 F.3d at 1052 (citing 20 C.F.R. § 404.1521). Next, at step three, the ALJ considers whether a claimant's medically severe impairments are equivalent to a condition "listed in the appendix of the relevant disability regulation," *i.e.*, the "Listings." *Wall*, 561 F.3d at 1052 (quoting *Allen*, 357 F.3d at 1142). "If a claimant's impairments are not equivalent to a listed impairment, the ALJ must consider, at step four, whether a claimant's impairments prevent her from performing her past relevant work." *Wall*, 561 F.3d at 1052 (citing *Allen*, 357 F.3d at 1142). "Even if a claimant is so impaired, the agency considers, at step five, whether she possesses the sufficient [RFC] to perform

other work in the national economy." *Id.*

**B.     Substantial Evidence**

An ALJ must consider all evidence and explain why he or she finds a claimant not disabled. *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). However, the ALJ need not specifically "reference everything in the administrative record." *Wilson*, 602 F.3d at 1148. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1140 (internal quotation marks omitted). "It requires more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). A decision by the ALJ is not based on substantial evidence "if it is overwhelmed by other evidence in the record . . . ." *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005). In other words, the Court's determination of whether the ALJ has supported his or her ruling with substantial evidence "must be based upon the record taken as a whole." *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994). Further, evidence is not substantial if it "constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). In addition, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

### III.  Analysis

Plaintiff requests judicial review of the ALJ's decision denying her disability insurance benefits and supplemental security income. *Brief* [#16] at 3. Specifically, Plaintiff argues that the ALJ erred regarding her compliance with treatment and at steps three, four, and five of his analysis. The Court addresses each argument in turn.

**A.     Compliance with Treatment**

Plaintiff argues both that the ALJ committed legal error in his assessment of Plaintiff's compliance with treatment and that substantial evidence does not support his findings. *Brief* [#16] at 9-26. After thoroughly summarizing the evidence, the ALJ concluded:

> As this review of the record demonstrates, the claimant has been noncompliant with prescribed treatment again and again. She failed to follow up with Spanish Peaks when referred by Ms. Richards, and she was repeatedly noncompliant with medication that she acknowledged to be helpful in controlling her symptoms. As such, the claimant ran afoul of the Regulations at 20 CFR § 404.1530, which requires [sic] an individual to follow prescribed treatment if it can restore her ability to work. If the claimant does not follow such treatment without good reason, the Social Security Administration will not grant disability benefits. Since the claimant felt capable of returning to work numerous times when compliant with medications, the treatment obviously restore[d] her ability to work. The only question is whether the claimant had a "good reason" within the meaning of the Regulations not to follow the treatment. 20 CFR § 404.1530(c) gives a number of examples of good reasons: the specific medical treatment is contrary to the established teaching and tenets of your religion; surgery was previously performed with unsuccessful results and is again being recommended for the same impairment; the treatment because of its magnitude (e.g., open heart surgery) or unusual nature (e.g., organ transplant) is very risky; the treatment involves amputation of an extremity, or a major part of an extremity. The claimant's reasons for noncompliance do not approach the example objections in nature or degree. The claimant has stated that she simply feels better when working and decides that she no longer needs to take her medications, and has invented other similar excuses. Without a good reason for her noncompliance, the Social Security Administration cannot grant benefits based on the limiting effects of the claimant's controllable bipolar symptoms.

Tr. 27.

Pursuant to 20 C.F.R. §§ 404.1530, 416.930, a claimant must follow treatment prescribed by her physician if it can restore her ability to work, and failure to do so, without a good reason, results in the denial of benefits. *Cowan v. Astrue*, 552 F.3d 1182, 1191 (10th Cir. 2008). Specifically:

> a) What treatment you must follow. In order to get benefits, you must follow

> treatment prescribed by your physician if this treatment can restore your ability to work.
>
> (b) When you do not follow prescribed treatment. If you do not follow the prescribed treatment without a good reason, we will not find you disabled or, if you are already receiving benefits, we will stop paying you benefits.
>
> (c) Acceptable reasons for failure to follow prescribed treatment. We will consider your physical, mental, educational, and linguistic limitations (including any lack of facility with the English language) when determining if you have an acceptable reason for failure to follow prescribed treatment. . .

20 C.F.R. §§ 404.1530, 416.930.

Four elements are examined when reviewing the impact a claimant's failure to follow treatment has on a disability determination: (1) whether the treatment would restore the claimant's ability to work, (2) whether the treatment was prescribed, (3) whether the treatment was refused, and, if so, (4) whether the refusal was without justifiable excuse. *Frey v. Bowen*, 816 F.2d 508, 517 (10th Cir. 1987). The *Frey v. Bowen* requirements apply when noncompliance with medically prescribed treatment is a stand-alone basis for denying benefits. *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000). Such is the case here. Although the ALJ also analyzed Plaintiff's mental functioning *in the alternative* to his holding regarding her medical treatment, her noncompliance with treatment was a stand-alone basis for his decision. *See, e.g.*, Tr. 30 ("The claimant is demonstrably capable of returning to work in accordance with this [RFC] assessment when compliant with prescribed medication."). With regard to the first three elements, the ALJ relied on substantial evidence to demonstrate that the psychiatric medications were helpful in controlling Plaintiff's symptoms to the extent that she repeatedly felt capable of returning to work when she was compliant with her medications, but, regardless, she was repeatedly noncompliant. Tr. 27, 254, 266, 284, 322, 393, 396, 398, 403, 418, 548-50, 555, 559, 563.

Turning to the fourth element, i.e., whether the refusal to follow treatment was without justifiable excuse, Plaintiff cites to the Social Security Administration's internal guidelines for proceeding and adjudicating claims under the Social Security Act for the proposition that "[t]he existence of a psychiatric impairment may provide good reason for a claimant's failure to follow prescribed treatment." *Brief* [#16] at 20 (quoting Hearings, Appeals, and Litigation Law Manuel II-3-1). "'[I]f a claimant has a psychiatric impairment and . . . refusal to follow prescribed treatment is based on that impairment or that impairment and a combination of other impairments,' the impairment may be found to be a good reason for not following prescribed treatment." *Brief* [#16] at 21 (quoting Hearings, Appeals, and Litigation Law Manuel II-3-1). Plaintiff fails to demonstrate, however, that there is any evidence in the record connecting her medication noncompliance with her mental impairments which the ALJ failed to consider. The issue here is not whether Plaintiff is able to restart taking her medication when she has been noncompliant; based on a review of the record, she appears to have done this many times despite her impairments. *See generally* Tr. 25-26 (summarizing the evidence of Plaintiff's medication compliance).

The ALJ gave Plaintiff the opportunity to explain the specific reasons for her repeated failure to continue taking her medications so he could determine whether a justifiable cause existed for her failure. *See Robinson v. Barnhart*, 366 F.3d 1078, 1083-84 (10th Cir. 2004). However, the ALJ noted that the record only provided support for a variety of non-justifiable reasons for stopping treatment. For example: (1) she was trying to make her medications last; (2) she tended to make generalized excuses to her physician for not taking her medications; (3) she did not want to "mess up her disability case;" (4) she

hated the way the medications made her feel; (5) she stopped taking Seroquel because she saw a magazine advertisement that worried her about the drug's correlation with cataract formation; (6) she flushed her medications down the toilet after her boyfriend reminded her to take them, because she believed he wanted her to take the medication so she would be passive and he could cheat on her; and (7) she felt she did not need to take her medications when working. *See generally* Tr. 25-26 (citing to the record). Plaintiff does not provide substantial evidence of any justifiable excuse for failure to follow treatment, such as the inability to pay for treatment. *See Thompson v. Sullivan*, 987 F.2d 1482, 1489-90 (10th Cir. 1993). Thus, there is no substantial evidence in the record to which the Court's attention has been directed which demonstrates that, once Plaintiff has begun taking her medication and is feeling better, her noncompliance is due to uncontrolled mental impairments. In other words, Plaintiff has not demonstrated that the reasons for noncompliance pertain not to Plaintiff's personal decisions, but rather to uncontrolled issues not addressed by her medication. Without this link, the Court cannot find that the ALJ erred in his decision.

>Finally, Plaintiff cites to Social Security Ruling ("SSR") 82–59, which provides in part:
>
>The issue of failure to follow prescribed treatment should be resolved as quickly as possible. However, in a case where the issue of 'failure' arises or remains unresolved 12 months after onset, an allowance is in order. The issue of 'failure' and if it is justifiable will continue to be developed. If the issue of 'failure' arises at the hearing or AC levels, if not fully developed through testimony and/or evidence submitted, and it has been 12 months after onset, a favorable decision will be issued, and the case will be referred for development of failure to follow prescribed treatment.

1982 WL 31384, at *1, 5. Plaintiff argues that, to the extent the ALJ found Plaintiff was disabled but for her noncompliance, remand for payment of benefits is warranted based on this SSR. *Brief* [#16] at 21. Plaintiff misinterprets this SSR, however. In context, for this

portion of the SSR to apply, there must be a finding that Plaintiff was compliant with her medications for at least a twelve-month period after the onset of her disability. *See* SSR 82–59, 1982 WL 31384, at *5 ("If the determination is made that 'failure' did not occur until at least 12 months after onset, a period of disability may be established . . . ."). However, without such a finding, Plaintiff is not entitled to benefits. *See id.* ("If a determination is made that within 12 months of onset failure to follow prescribed treatment has occurred and it is not justifiable, the claim must be denied because the duration requirement is not met."). Here, Plaintiff has failed to present evidence that she was compliant with her medications for a full twelve-month period, and thus she not entitled to benefits pursuant to SSR 82–59.

Plaintiff did not present any evidence to the ALJ to demonstrate that her failure to take her prescribed medication was justified. She was appropriately given the opportunity to fully express her specific reasons for not complying with the prescribed treatment. Under these circumstances, the Court finds that the ALJ complied with the case law, 20 C.F.R. §§ 404.1530, 416.920, and SSR 82–59, and that the ALJ's decision is supported by substantial evidence.

**B.     Plaintiff's Other Arguments**

Plaintiff's other arguments within the context of the discussion regarding her compliance with treatment may be quickly addressed. At step three, the ALJ found that, when Plaintiff was compliant with her medications, she did not meet or equal a listed impairment. Tr. 23. At step four, the ALJ found that, when Plaintiff was compliant with her medications, she could perform light work with the exception of jobs requiring public contact. Tr. 24. At step five, the ALJ found that, when Plaintiff was compliant with her medications, Plaintiff had the ability to work a variety of jobs that exist in significant

numbers in the national economy. Tr. 30. Each of these determinations was tied to the periods when Plaintiff was compliant with her medication. *See* Tr. 30 ("The claimant is demonstrably capable of returning to work in accordance with this assessment when compliant with prescribed medication.").

### 1.   Medical Equivalence

Plaintiff argues that the ALJ should have called a medical expert to testify at the hearing and offer an opinion on the issue of medical equivalence at step three. *Brief* [#16] at 29. Based on this alleged error, Plaintiff asserts that the ALJ failed to properly consider whether all her impairments in combination were medically equivalent to a listed impairment. *See* 20 C.F.R. 416.926(b)(3). The question of medical equivalence must be supported by the opinion of a medical expert. SSR 96–6p, 1996 WL 374180, at *3 (SSA July 2, 1996). However, "that requirement is satisfied . . . by the signature of an agency medical or psychological consultant on at least one of the forms typically used by the Commissioner to assess disability at the initial stages of the administrative process." *See Ghini v. Colvin*, __ F. Supp. 3d __, __, 2015 WL 1064228, at *3 (D. Colo. Mar. 9, 2015) (citing SSR 96–6p, 1996 WL 374180, at *3). The record here includes such a form that was signed in February 2011 by Gayle Frommelt, Ph.D. Tr. 65. Plaintiff directs the Court's attention to nothing that suggests that the particular circumstances of this case required an updated opinion. *See* SSR 96–6p, 1996 WL 374180, at *4; *Brief* [#16] at 29; *Response* [#17] at 15. Plaintiff's argument is therefore without merit.

### 2.   Meeting or Equaling a Listed Impairment

At step three, the ALJ is only required to determine "whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe

enough to render one disabled . . . ." *Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003). Plaintiff devotes considerable briefing to parsing through the effects of Plaintiff's impairments in an attempt to demonstrate that she meets or equals one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1, specifically Listing 12.04 (affective disorders), Listing 12.06 (anxiety-related disorders), and Listing 12.08 (personality disorders). *Brief* [#16] at 9-18. In his decision, the ALJ found that Plaintiff did not meet the "B" criteria of the Listings, which require at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; and repeated episodes of decompensation, each of extended duration. Tr. 27-28. However, the evidence used to support Plaintiff's argument to the contrary is primarily drawn from periods of treatment noncompliance. *Brief* [#16] at 9-18. As already determined, the ALJ relied on substantial evidence that Plaintiff's impairments are significantly less pronounced when she is properly medicated. *See* Tr. 25-26 (citing to the record). For example, the ALJ found that the record indicated that Plaintiff's "mood stabilized as psychiatric medications [are] reintroduced," Tr. 25; "as long as she stays on her medicine, . . . she seems to have a good response," Tr. 25 (quoting Plaintiff's counselor Elizabeth Richards); missing dosages of her medication "dramatically impact[s] her mood and ability to take care of herself and manage the stress in her life," Tr. 26; and she "reported only very mild mood swings without depression or mania, and described good sleep and appetite" when on her medication, Tr. 25-26. With this background in mind, and reading the ALJ's decision as a whole, the Court cannot find that the ALJ lacked substantial evidence to find that Plaintiff's impairments did not meet or equal a Listing when she was compliant with her medication.

### 3.     Medical Opinions

Plaintiff argues that the ALJ improperly discounted the opinions of Richard B. Madsen, Ph.D. ("Madsen"), a clinical psychologist who examined Plaintiff in January 2011, and Charles R. Dygert, M.D. ("Dygert"), a psychiatrist at Spanish Peaks who began treating Plaintiff in June 2012.  Tr. 23-24.

An ALJ must give the opinion of a treating physician controlling weight only when it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "consistent with other substantial evidence in the record." *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight."  *Id.*   Even if a treating physician's medical opinion is not entitled to controlling weight, however, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." *Fowler v. Bowen*, 876 F.2d 1451, 1453 (10th Cir. 1989).  Those factors are:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001); 20 C.F.R. § 404.1527(c). Although the six factors listed above are to be considered in weighing medical opinions, the Court does not insist on a factor-by-factor analysis so long as the "ALJ's decision [is] 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Oldham*,

509 F.3d at 1258 (quoting *Watkins*, 350 F.3d at 1300).

Here, substantial evidence supports the ALJ's findings that Plaintiff's contacts with Dr. Madsen and Dr. Dygert came during periods when Plaintiff was noncompliant with her medication. *See* Tr. 29, 550, 566. The ALJ must consider medical opinions in the context of the record as a whole to evaluate their consistency and may reasonably discount opinions that are inconsistent with other medical evidence. 20 C.F.R. § 404.1527(c)(4); *Raymond v. Astrue*, 621 F.3d 1269, 1272, (10th Cir. 2009). Here, as discussed previously, substantial evidence supports the ALJ's finding that Plaintiff's mental condition was controllable by medication and that she could work when compliant. Neither Dr. Madsen nor Dr. Dygert examined Plaintiff during a period of compliance. *See* Tr. 29, 550, 566. Thus, the ALJ was entitled to give their medical opinions little weight with respect to Plaintiff's mental ability during periods of treatment compliance. Accordingly, the ALJ has not committed error with respect to his treatment of Dr. Madsen's and Dr. Dygert's medical opinions. *Glenn v. Shalala*, 21 F.3d 983, 988 (10th Cir. 1994) (explaining that the Court must affirm if, considering the evidence as a whole, there is sufficient evidence which a reasonable mind might accept as adequate to support a conclusion).

### 4. Credibility

"Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." *Wilson v. Astrue*, 602 F.3d 1136, 1144 (10th Cir. 2010) (internal quotation marks omitted); *see also White v. Barnhart*, 287 F.3d 903, 909 (10th Cir. 2001). "Nevertheless an ALJ's adverse credibility finding 'should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.'" *Mendez v. Colvin*, 588 F. App'x 776, 779 (10th

Cir. 2014) (quoting *Wilson*, 602 F.3d at 1144). The ALJ is not required to set forth a formalistic factor-by-factor recitation of the evidence, but must only set forth the specific evidence he relied on in evaluating Plaintiff's testimony. See *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000). Therefore, as long as the ALJ links his credibility assessment to specific evidence in the record, his determination is entitled to substantial deference. *White*, 28 F.3d at 910; *see also Qualls*, 206 F.3d at 1372; *Casias v. Sec. of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991) ("We defer to the ALJ as trier of fact, the individual optimally positioned to observe and assess the witness credibility."). Such deference is warranted on this record.

An ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96–7p, 1996 WL 374186, at *4 (July 2, 1996); *see also Jimison ex rel. Sims v. Colvin*, 513 F. App'x 789, 795 (10th Cir. 2013) (table decision). However, the ALJ "is not required to 'identif[y] any specific incredible statements,' so long as the ALJ 'indicat[es] to what extent he credited what [the claimant] said when determining the limiting effect of [the claimant's] symptoms.'" *Bales v. Colvin*, 576 F. App'x 792, 800 (10th Cir. 2014) (quoting *Keyes–Zachary v. Astrue*, 695 F.3d 1165, 1170 (10th Cir. 2012)) (modifications in original). "[C]ommon sense, not technical perfection, is our guide." *Keyes–Zachary*, 695 F.3d at 1167.

The ALJ found that Plaintiff's credibility was diminished regarding her assertion of disability because she was repeatedly noncompliant with her medication and because she was functional when compliant. Tr. 30. Although Plaintiff argues that this noncompliance

was due to her mental impairments, the Court has already discussed how she has failed to demonstrate that the ALJ erred by finding that her noncompliance was not due to her mental impairments. *Brief* [#16] at 32-33. To the extent Plaintiff argues that the ALJ failed to consider stress as a factor here, *id.* at 33; *Response* [#17] at 17-18, the Court notes that he did address how failure to comply with her medications "dramatically impact[ed] . . . her ability to . . . manage the stress in her life." Tr. 26. Thus, the ALJ gave specific and legitimate reasons for his determination that Plaintiff's testimony was entitled to less than full weight.

### 5. The VE's Opinion

Finally, Plaintiff's argument regarding the ALJ's questioning of the VE is not entirely clear. *Brief* [#16] at 36. She appears to argue that the ALJ failed to account for Plaintiff's moderate limitations in concentration. *Id.* (arguing that "the existence of a moderate impairment is not the same as no impairment at all"). However, the ALJ did in fact account for her moderate limitations with his second question to the VE: "No public contact, no more than superficial contact with supervisors and employees. . . . Please assume additional limitations of a concentration difficulty so that she could only do simple, unskilled, SVP-1 and SVP-2 jobs." Tr. 60. Plaintiff appears to contend that the VE responded to this query by stating that Plaintiff could do *all* SVP-1 and SVP-2 jobs, but the record shows otherwise. Rather, the VE merely affirmed that a person with those limitations could perform the jobs he had previously identified: electronics assembler, housekeeper, and small products assembler. Tr. 60. Thus, it does not appear that the ALJ fully equated Plaintiff's moderate concentration limitations with unskilled work, as Plaintiff argues. Accordingly, the ALJ did not commit error at step five.

### IV. Conclusion

For the foregoing reasons,

IT IS HEREBY **ORDERED** that the decision of the Commissioner that Plaintiff is not disabled is **AFFIRMED**.

IT IS FURTHER **ORDERED** that each party shall bear its own costs and attorney's fees.

Dated:  April 24, 2015

BY THE COURT:

*/s/ Kristen L. Mix*

Kristen L. Mix
United States Magistrate Judge